UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT L. DYKES,                    Civil Action No.: 18-11528
*Named on complaint as*             Honorable Matthew F. Leitman
*Robert L. Dykes-Bey*               Magistrate Judge Elizabeth A. Stafford

                         Plaintiff

v.

BRIAN FULLER, *et al.*,

                    Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
AND TO SUA SPONTE DISMISS CLAIM AGAINST
DEFENDANT ABROGAST [ECF NOS. 12, 25]**

## I.    INTRODUCTION

Plaintiff Robert L. Dykes, a *pro se* prisoner confined with the Michigan

Department of Corrections (MDOC), sues Sergeants Brian Fuller and

George Searfoss, and food service supervisor Arbogast under 42 U.S.C.

§ 1983, alleging the defendants violated his First Amendment rights by

deliberately and intentionally retaliating against him for exercising his right

to file a grievance, and failing to adhere properly to MDOC policy.  [ECF

No. 1, PageID.1].

Fuller and Searfoss move for summary judgment, arguing Dykes failed to exhaust properly his administrative remedies before filing this suit. [ECF Nos. 12, 25].  The Court agrees and thus recommends **GRANTING** defendants' motions for summary judgment.  The Court also recommends *sua sponte* dismissal of Abrogast, who has not yet served, because Dykes' failure to exhaust his administrative remedies applies equally to Abrogast.

## II.    BACKGROUND

Dykes filed a grievance against Fuller in May 2017, alleging that he abused his power by placing Dykes on "toplock/non-bond" so that he could not work for six days.  [ECF No. 1, PageID.4; ECF No. 1-1, PageID.12-15]. Dykes alleges that, when he returned to work, supervisor Arbogast told him to not get comfortable because Sgt. Searfoss did not want him (Dykes) in food services.  [ECF No. 1, PageID.4].  Abrogast allegedly said, "You know why.  Fuller!" [*Id.*].  According to Dykes, Abrogast wrote a false class-one misconduct ticket the following day alleging that Dykes smelled of alcohol, and Searfoss wrote a memorandum saying that he too smelled alcohol on Dykes.  [*Id.*, PageID.4-5].  Because of this allegation, Dykes could not work from May 13, 2017 until he was found not guilty of the misconduct after a hearing on June 16, 2017.  [*Id.*, PageID.5].

Dykes' complaint alleges that the defendants retaliated against him for exercising his First Amendment right to "file a legitimate grievance [against Fuller], when they fabricated a false claim" in a misconduct report. [ECF No. 1, PageID.1]. He contends that the misconduct report caused him to lose 30 days of work, to face significant sanctions and to place his only source of income in jeopardy. [*Id.*].

## III.   ANALYSIS

### A.

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986); *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). In deciding a summary judgment motion, the Court must view the factual evidence and

draw all reasonable inferences in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006).  Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90, 93 (emphasis in original).  Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record.  *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Jones*, 549 U.S. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."  *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).  But a prisoner countering a motion alleging failure to exhaust "must

offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, 2014 WL 8186701, at \*5 (E.D. Mich. Oct. 29, 2014), *adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015)). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

Two issues are raised by defendants' motions: (1) whether Dykes was required to exhaust his retaliation claim through the misconduct hearing process; and (2) whether his written grievances properly exhausted his retaliation claim. As described below, the Court finds that Dykes was not required to exhaust his retaliation claim through the misconduct hearing process, but that his written grievances did not exhaust his retaliation claim against any defendant.

**B.**

A prisoner found guilty of misconduct, and thus aggrieved by a hearing officer's decision, must exhaust his retaliation claim through the misconduct hearing. MDOC Policy Directive (PD) 03.02.130, ¶ F(1)

(effective July 9, 2007),[1] states that decisions made in the prison hearings division are non-grievable.  And under Michigan law, "A prisoner aggrieved by a final decision or order of a hearings officer shall file a motion or application for rehearing in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws Ann. § 791.255.  This means that, instead of filing a grievance, a prisoner found guilty of misconduct "shall file a motion or application for rehearing in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." *Bergey v. Tribley*, 2015 WL 7731426, *3 n.1 (W.D. Mich. 2015) (citing Mich. Comp. Laws § 791.255(1)).  Based on these rules, the court in *Harris-Bey v. Alcodray* ruled that the plaintiff had not exhausted his retaliation claim because "he did not allege retaliation at his misconduct hearing and, additionally, he did not appeal the finding of guilt following that hearing as required by MDOC Policy Directive 03.03.150 at VVV, which was the sole avenue for such an appeal."  No. 16-12666, 2017 WL 3124328, at *4 (E.D. Mich. July 24, 2017).

---

[1] The grievance policy cited here was effective from July 9, 2007 to March 17, 2019.  *See* https://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf

These rules do not apply here because Dykes' was found *not guilty* by the misconduct hearing officer. His claim of retaliation did not arise out a decision made during his hearing; it arose only from defendants allegedly fabricating a misconduct ticket, causing him to miss work and face other sanctions. Since Dykes is not "a prisoner aggrieved by a final decision or order of a hearing officer," § 791.255(1), he had no right or reason to request a rehearing and exhaust his retaliation claim in that way. An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). Here, defendants argue that Dykes' only avenue was to exhaust through the hearing and appeal processes, but he was not aggrieved by a hearing decision, so that avenue was unavailable to him.

Thus, defendants' argument that Dykes was required to exhaust his retaliation through the misconduct hearing process should be rejected. But Dykes did not exhaust his retaliation claim through his written grievances.

## C.

### 1. The MDOC Grievances Process

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim," but it is self-evident that an untimely or otherwise improperly filed grievance

does not fulfill the exhaustion requirement.  *Jones*, 549 U.S. at 218; *see also Woodford,* 548 U.S. at 97. A prisoner's grievance must give "prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint."  *Bell v. Konteh,* 450 F.3d 651, 654 (6th Cir. 2006) (citation and internal quotation marks omitted).

PD 03.02.130 has a three-step procedure that prisoners must follow to complete the administrative review process and properly exhaust grievances.  A prisoner must attempt to informally resolve the problem with the allegedly offending staff, and then may file a Step I grievance about any unresolved issues with a grievance coordinator.  PD 03.02.130, ¶ P and R. The prisoner may then file a Step II grievance appeal within ten days of receiving the Step I response or, if no response was received, within ten business days after the date the response was due.  *Id.* at ¶ BB.  The same schedule applies to a Step III appeal—it is due within ten business days of receiving the Step II response or, if no response was received, within ten business days after the date the response was due.  *Id.* at ¶ FF.  Prisoners must appeal their grievances through Step III and wait until receipt of a Step III response, or until the response is past due, before filing suit.

Importantly, a "[p]laintiff cannot raise a new issue in a grievance appeal and have it be deemed exhausted, unless the MDOC proceeded to address that new claim on the merits." *Newson v. Steele,* No. 09-10346, 2010 WL 3123295, at *5 (E.D. Mich. July 1, 2010), *adopted,* No. 09-10346, 2010 WL 3123288 (E.D. Mich. Aug. 9, 2010) (collecting cases).

As Dykes notes, prisoner's grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory" to satisfy the exhaustion requirement. *Bell*, 450 F.3d at 654 (internal quotations marks and citations omitted). This standard is consistent with the practice of liberally construing *pro se* prisoners' filings. *Id.* So courts have held that the term "retaliation" need not be in a grievance to properly exhaust a claim for retaliation, but some retaliatory motive must be suggested in the grievance to sufficiently place prison officials on notice that the prisoner is asserting a retaliation claim. *Doe v. Anderson*, No. 15-13852, 2017 WL 4684614, at *4 (E.D. Mich. Oct. 18, 2017); *Jackson v. Huss*, 2015 WL 5691026, at *7 (W.D. Mich. Sept. 28, 2015).

In *Jackson,* the court determined that plaintiff's allegations that defendant was "not treating [him] because of [his] complaints against the prison" was enough to put prison officials on notice that he was asserting a

retaliation claim.  2015 WL 5691026, at *7.  But in *Doe v. Anderson*, the grievance alleged only that the announcement of plaintiff's HIV positive status over the prison loudspeaker placed his life in jeopardy and amounted to defamation of character.  2017 WL 4684614, at *4.  Because the grievance did not suggest that the loudspeaker announcement was prompted by a retaliatory motive, the *Doe* court ruled that the plaintiff failed to exhaust any grievance for a retaliation claim.  *Id.*

As noted, Dykes' complaint here alleges that Abrogast and Searfoss fabricated the misconduct report to retaliate for Dykes' grievance against Fuller.  None of Dykes' grievances exhausted this claim.

### 2.  *Grievance Number 2017-05-0411-27A*

Dykes filed three grievances that are related to the defendants.  The first grievance—number 2017-05-0411-27A—was filed on May 7, 2017 against Fuller, and Dykes claimed abuse of governmental power and discrimination.  [ECF No. 1-1, PageID.14-18].  Dykes does not claim that this grievance exhausted his exhaustion claim.  Instead, this grievance is allegedly the reason that Abrocast and Searfoss retaliated by filing the false misconduct report.  Notably, this is the only grievance filed against Fuller.

### 3.  Grievance Number 2017-06-0592-27A

On June 21, 2017, after being found not guilty of misconduct, Dykes filed grievance number 2017-06-0592-27A against Abrogast and Searfoss, alleging that the misconduct report was fabricated.  [ECF No. 1-1, PageID.25].  This grievance was rejected as non-grievable under the policy prohibiting grievances arising out of a misconduct hearing.[2]  [*Id.*, PageID.24].  Dykes filed a Step II appeal, stating that "[t]his grievance is strictly related to the unethical conduct of Arbogast and Sgt. Searfoss, who falsified a misconduct" report.  [*Id.*, PageID.27].  In response, the Warden summarily upheld the Step I decision.  [*Id.*, PageID.28].  In his Step III appeal, Dykes emphasized that falsifying documents is prohibited, and he alleged that "these matters are addressed by the Director's Office, Internal Affairs,[3] or Civil Service."  [*Id.*, PageID.27].

Dykes did not allege at any step of his 2017-06-0592-27A grievance that Abrocast or Searfoss falsely reported that he engaged in misconduct because of his earlier grievance against Fuller.  The earlier grievance against Fuller was not mentioned at all.  So grievance number 2017-06-0592-27A did not exhaust Dykes' claim that Abrogast and Searfoss were

---

[2] For the reasons stated below, the Court finds this reasoning to be without merit.

[3] The alleged internal affairs complaint will be addressed below.

motivated to write the allegedly fabricated misconduct report because of retaliation.

### 4. Grievance Number STF-17-06-0593-01C

On June 21, 2019, the same day as Dykes filed grievance number 2017-06-0592-27A, he filed grievance number STF-17-06-0593-01C, but did not name a staff member about whom he complained.  [ECF No. 12-2, PageID.106].  In the latter grievance, Dykes referred to the not guilty finding from the misconduct hearing and said that he had been disciplined without explanation, causing him to lose his pay rate and opportunity to move up. [*Id.*].  He requested lost pay, restoration of his pay rate and the opportunity for a lead position.  Dykes also stated, "A complaint has been filed with the internal affairs."  [*Id.*].

Grievance number STF-17-06-0593-01C was rejected at Step I because Dykes was not being disciplined and had been given an available position in food services, entitling him to move up when positions because available.  [ECF No. 12-2, PageID.106].  At Step II, Dykes alleged that the grievance was not resolved because he had not received his back pay after missing work because of the allegedly fabricated misconduct report.  [*Id.*, PageID.106].  The Warden then awarded Dykes "catch up pay" and considered the grievance resolved.  [*Id.*, PageID.105].  For his Step III

appeal, Dykes stated that he had not been able to verify that he received his back pay and that he "was unlawfully retaliated against."  [*Id.*, PageID.104].  Dykes Step III appeal was summarily denied without reference to any of his allegations.  [*Id.*, PageID.103].

Grievance number STF-17-06-0593-01C did not give defendants fair notice of the alleged retaliation claim.  *Bell,* 450 F.3d at 654.  First, Dykes did not mention anything that could be construed as retaliation until Step III. As noted, a "[p]laintiff cannot raise a new issue in a grievance appeal and have it be deemed exhausted, unless the MDOC proceeded to address that new claim on the merits."  *Newson*, 2010 WL 3123295 at *5.  And while Dykes did not have to name the defendants in his grievance, he was required to describe the alleged misconduct underlying his retaliation claim to allow correction officials the opportunity to address the complaint before suit was filed.  *See Anderson v. Jutzy,* 175 F. Supp. 3d 781, 790 (E.D. Mich. 2016) (plaintiff need not name defendant in grievance but must articulate the source of the complaint).  Dykes' conclusory allegation that he "was unlawfully retaliated against" was not enough to give fair notice, and the MDOC did not address that allegation in its response.  [*Id.*, PageID.103-04].

Dykes did not exhaust his retaliation claim through the PD 03.02.130 process.  His reliance on an alleged internal affairs complaint is also without merit.

### 5. *Internal Affairs Complaint*

Dykes offers a letter dated June 21, 2019, the same day as he filed his grievances, that he says he submitted to the internal affairs department. [ECF No. 1-1, PageID.31-33].  The Court sees no proof that the letter was sent to the internal affairs department.  In the letter, Dykes complains that Fuller, Searfoss, Arbogast and others "unlawfully singled [him] out and retaliated against [him] for exercising [his] right to file grievances."  [*Id.*]. Although the details alleged are not identical, Dykes' internal affairs letter and his complaint here arise out of the same alleged incidents.  [*Id.*; ECF No. 1].  Dykes cites his internal affairs complaint as proof that he exhausted properly his retaliation claim.  [ECF No. 16, PageID.181].  He is mistaken.

First, the policy allowing grievances to be made through internal affairs relates to claims of "staff sexual misconduct, staff sexual harassment, and staff overfamiliarity with prisoners"; the policy arises out of the Prison Rape Elimination Act (PREA).  MDOC Policy Directive

03.03.140 (effective April 24, 2017).[4]  This policy directive states, "Any PREA Grievance containing issues other than sexual abuse shall be denied and returned to the prisoner with instructions to submit the grievance in accordance with PD 03.02.130 'Prisoner/Parolee Grievances.'" *Id.*, ¶ II.  Dykes does not claim sexual misconduct or anything related to the PREA.

Dykes cites PD 03.02.130, ¶ P, as permitting him to grieve to internal affairs, [ECF No. 16, PageID.181], but that paragraph states only that a prisoner need not attempt to informally resolve an issue with the staff member *if* "the issue falls within the jurisdiction of the Internal Affairs Division."  PD 03.02.130, ¶ P.  Dykes does not show that his retaliation claim falls within the jurisdiction of the internal affairs department.

Dykes was required to exhaust his retaliation under PD 03.02.130, and any complaint he made to the internal affairs department would not relieve him of that obligation.

### 6.  *Recommended Sua Sponte Dismissal*

Under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the Court has an obligation to dismiss complaints *sua sponte* when they fail to state a claim,

---

[4] *See* https://www.michigan.gov/documents/corrections/03_03_140_559703_7.pdf

are frivolous, or seek monetary relief from immune defendants. *In re Prison Litig. Reform Act,* 105 F.3d 1131, 1134 (6th Cir. 1997).

Arbogast has not been served with Dykes' complaint. The Court ordered Dykes to provide Arbogast's address, but Dykes called that an impossible task given his incarceration and asked the Court to facilitate efforts to find Arbogast's address. [ECF No. 34]. Although Dykes' difficulty in finding Abrogast's address is understandable, that is his responsibility. *Spencer v. Bynum*, No. 13-13056, 2013 WL 4041870, at *2 (E.D. Mich. Aug. 8, 2013) ("Where a plaintiff is proceeding in forma pauperis, the district court must bear the responsibility for issuing the plaintiff's process to a United States Marshal's Office, who must effect service upon the defendants *once the plaintiff has properly identified the defendants in the complaint."*) (citations omitted and emphasis added).

And although failure to exhaust is an affirmative defense, courts have "held that where a plaintiff clearly fails to exhaust his administrative remedies for claims asserted against defendants who have not appeared, the Court may nonetheless dismiss the claims *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A." *Coleman v. Snyder,* No. 17-11730, 2018 WL 4103364, at *2 (E.D. Mich. Aug. 29, 2018). *Sua sponte* dismissal is especially warranted when "the claims against non-appearing defendants

are the same as those against appearing-defendants." *Id.* *See also*

*Threatt v. Williams-Ward*, No. CV 15-12585, 2016 WL 6653013, at *6 (E.D.

Mich. July 13, 2016), *adopted*, 2016 WL 4607639 (E.D. Mich. Sept. 6,

2016) ("Threatt failed to exhaust his administrative remedies for his claims

against defendants who have not appeared, such that they should be *sua*

*sponte* dismissed pursuant to §§ 1915(e)(2)(B) and 1915A.").

The claims against Abrogast should therefore be dismissed *sua*

*sponte.*

## IV. CONCLUSION

The Court thus **RECOMMENDS** that defendants' motions for

summary judgment **[ECF Nos. 12, 25]** be **GRANTED,** and that the claims

against all defendants be **DISMISSED WITHOUT PREJUDICE**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: August 7, 2019

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2). Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 7, 2019.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager